[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14623
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-04450-RWS


SHARRON BANKS,

Plaintiff-Appellant,

versus

TANNER MEDICAL CENTER, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(October 21, 2016)

Before ED CARNES, Chief Judge, TJOFLAT, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Sharron Banks, proceeding pro se, filed a lawsuit against Tanner Medical

Center, Inc., alleging that it engaged in race discrimination and retaliated against

her.  A magistrate judge issued a report recommending that the district court grant summary judgment to Tanner because Banks was judicially estopped from pursuing her claims and because her claims failed on the merits.  Banks did not timely object, and the district court adopted the report and recommendation and granted summary judgment in Tanner's favor.  This is Banks' appeal.[1]

## I.

In September 2010 Tanner hired Banks, an African-American female and registered nurse, to work on an as-needed basis.[2]  Tanner requires every newly hired employee to complete an orientation that involves, among other things, a seasoned employee training the new employee on Tanner's policies, protocols, and procedures.  Tanner assigned two employees to train Banks.  During that training, one of those employees, John Larkee, made comments to Banks about her race and her blonde hair.  Banks found the comments offensive but she offered no evidence

---

[1] Eleventh Circuit Rule 3–1, which took effect on December 1, 2014, provides that "[a] party failing to object to a magistrate judge's findings or recommendations . . . waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions," so long as the magistrate judge informs the party of, among other things, "the consequences on appeal for failing to object."  11th Cir. R. 3–1.  To the extent that the rule applies to appeals of orders entered before it took effect (such as the order appealed here), it does not apply to this appeal because the magistrate judge did not give Banks complete notice of the consequences of failing to timely object.  Tanner argues that we should review for plain error under the standard we used before the enactment of Rule 3–1.  We need not decide whether that standard applies here because even under a de novo standard of review, the summary judgment against her is due to be affirmed.

[2] "At summary judgment we view the facts in the light most favorable to the nonmoving party."  Crawford v. Carroll, 529 F.3d 961, 963 n.1 (11th Cir. 2008) (citations omitted).  We recount the facts in that light, drawing from the "evidentiary materials on file."  Id.

showing that she complained to her supervisors or to the human resources department about them.

While the training component of the orientation process usually lasts between three and six weeks, Banks never completed her training to Tanner's satisfaction during the fourteen months she worked there. During her first few months at Tanner, patient numbers were low and, because she was hired to work on an as-needed basis, she was seldom scheduled to work. And when patient numbers later increased, her supervisors believed that she needed additional training to refresh her memory on Tanner's procedures because she had worked so infrequently in the previous months. Banks refused Tanner's attempts to provide her with that additional training, and Tanner eventually stopped scheduling her to work at all.

Banks contacted Dathan Sorrow, who worked in Tanner's human resources department, to complain about how long her orientation was taking and about not being placed on the schedule to work. Sorrow in turn asked Banks' supervisors, Sharon Taylor and Natasha Ryles, why she was still in orientation and not being scheduled to work any shifts. Taylor explained that she had stopped placing Banks on the schedule because she had refused to complete her training. Sorrow, Taylor, and Ryles agreed that before they decided to terminate Banks' employment, Ryles would contact her and see if she had changed her mind and was willing to finish

3

the training that they believed she needed.  Ryles called Banks and left several messages, but Banks did not return those calls.  On November 22, 2011 Tanner terminated Banks' employment, listing her failure "to fulfill [nursing] [r]equirements" as the basis. [3]  Tanner hired an African-American male nurse to replace her.

## II.

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  When a plaintiff has no direct evidence of discrimination, she may overcome summary judgment through the use of circumstantial evidence under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089 (1981).  Under this framework the plaintiff bears the initial burden of showing a prima facie case of discrimination.  McDonnell Douglas Corp., 411 U.S. at 802, 93 S. Ct. at 1824.  If the plaintiff makes that showing, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection."  Id.

---

[3] The record is unclear as to whether Sorrow, Taylor, and Ryles were the actual decision makers as to termination of Banks' employment or whether they recommended it to someone else who made the termination decision.  We will assume that Sorrow, Taylor, and Ryles made the final decision because even if they did, Tanner is still entitled to summary judgment.

"[S]hould the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were pretext for discrimination." Burdine, 450 U.S. at 252, 101 S. Ct. at 1093.

Banks contends that Tanner discriminated against her based on her race when it ended her employment. She offers no direct evidence of discrimination and attempts to overcome summary judgment through the burden-shifting framework. To make out a prima facie case of racial discrimination under the burden-shifting framework, Banks must show that (1) she "is a member of a protected racial class"; (2) she "was qualified for the position"; (3) she "experienced an adverse employment action"; and (4) she "was replaced by someone outside of h[er] protected class or received less favorable treatment than a similarly situated person outside of h[er] protected class." Flowers v. Troup Cty., Ga., Sch. Dist., 803 F.3d 1327, 1336 (11th Cir. 2015).

Banks cannot make that showing because she cannot meet the fourth element — showing that she was replaced by someone outside of her protected class or received less favorable treatment than a similarly situated person outside of her protected class. Banks does not dispute that she was replaced by a black male, and she does claim discrimination on the basis of sex. Instead, she argues that she received less favorable treatment than a similarly situated person outside

5

of her protected class, pointing to Mary Caparo, a white nurse whom Tanner hired around the same time it hired Banks.  Banks offers no evidence, however, that Tanner treated Caparo differently, and in fact the record shows that Tanner fired Caparo eight days after it fired Banks, with Caparo's notice of termination listing the same reason given for Banks' termination: failure to fulfill nursing requirements.  Because Banks points to no evidence that she received less favorable treatment than a similarly situated employee outside of her protected class, she cannot establish a prima facie showing of race discrimination.  The district court properly granted summary judgment on that claim.

Banks also contends that Tanner retaliated against her by firing her for complaining about co-employee Larkee.  Under Title VII's anti-retaliation provision it is unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3.  Like her race discrimination claim, Banks' retaliation claim fails because she has not established a prima facie case.  To make a prima facie showing of retaliation, a plaintiff must show that (1) she engaged in protected conduct; (2) she suffered an adverse action; and (3) a causal relation exists between the protected conduct and adverse action.  See Alvarez v. Royal Atl. Developers,

6

Inc., 610 F.3d 1253, 1268 (11th Cir. 2010) (quoting McCann v. Tillman, 526 F.3d 1370, 1375 (11th Cir. 2008)).

While Banks asserts that she complained to supervisors about Larkee's racial comments, she points to no evidence supporting that assertion. The evidence instead shows that when Banks complained, she complained about the scheduling and the fact that she was still in orientation, stating that "[i]t was obvious that the ball was dropped on [her]" and that she was "being punished and prosecuted for a mistake that lies with management and not [her]self." Without evidence that she complained to supervisors or to the human resources department about Larkee's race-based comments, she has not made out a a prima facie case of retaliation. The district court's grant of summary judgment in Tanner's favor on her retaliation claim was proper.[4]

**AFFIRMED.**

---

[4] In the report and recommendation addressing Tanner's motion for summary judgment, the magistrate judge also recommended that the district court deny Banks' four motions for default judgment against Tanner, which she had filed based on her belief that Tanner had committed discovery violations. To the extent Banks' notice of appeal covers the district court's adoption of that portion of the magistrate judge's report and recommendation, she failed to discuss those claims in her brief and thereby abandoned them. See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").